LOTTINGER, Judge.
This matter originated as á possessory action wherein the plaintiff, Mrs. Leonise Cambre, wife of Otto J. Zuelke, claimed to possess as owner a tract of land in the Parish of Livingston in Section 57, Township 8 South, Range 4 East. After alleging that her possession of same had been peaceful and undisturbed for more than a year, she averred that the defendants had caused her a real disturbance in fact and law by erecting a fence on the property and removing timber and pulpwood therefrom. She prayed that she be quieted in her possession and, in addition, sought the sum of $500 as damages for the trespass and cutting of timber.
The defendants, Octave T. Cambre and Arthur A. Lass, answered the suit denying any trespass, cutting of timber or erection of a fence on land of the plaintiff and averring that after having had their own property line established by a competent surveyor they' had erected a fence thereon and cleared a portion of same. Further, the defendants set out their title to the tract claimed by them and averred that they, and their authors in title had been in possession of same since-1870.
It appears that previous to the filing of the suit, the defendants had employed a Mr. E. G. Blakewood, Jr., C. E., to survey their line and that subsequently the plaintiff had employed a Mr. C. M. Moore, C. E., to survey the line. The lines as located' by these two gentlemen did not coincide and it appears that the Blakewood line came within an old fence on the south' and onto property claimed by plaintiff approximately one foot and on the north end' it came within an old fence and onto the property claimed by plaintiff a distance of approximately twenty-five feet. It was-along this line that the defendants erected1, the fence and it was from this triangular shaped tract that timber and pulpwood were cut.
At a pre-trial conference the above related facts were made known to the trial-judge who, with consent of counsel, appointed a third surveyor, Mr. A. C. Hol-lister, C. E. to survey the line dividing the properties and to report his findings to. the court. This was done and on October- *311 10, 1952, pursuant to regular assignment, a pre-trial conference was'held once again. It was agreed that the matter would be submitted without the taking of testimony and that both parties would file certified copies of the conveyances in their respective chains of title. Counsel for plaintiff introduced the map of Mr. Hollister together with his proces verbal and also the survey previously made by Mr. Moore. Counsel for defendants introduced their chain of title and certain maps, including that of Mr. Blakewood, together with the latter’s affidavit pointing out alleged defects in the Hollister survey. It was further stipulated that plaintiff would be allowed to establish the value of the timber by affidavit.
In accordance with the stipulation and agreement of counsel, the various instruments, maps, affidavits, etc., were filed in evidence and the matter submitted. The trial judge rendered judgment in favor of the plaintiff recognizing her ownership and possession of the property as shown on the Hollister survey and condemning defendants to pay damages in the amount of $50. This matter is now before us on a suspensive appeal taken by the defendants.
The record discloses that the plaintiff’s title springs from an act of partition whereby she received a portion of a tract of land described as follows:
“A certain piece or parcel of land with all buildings, and improvements, situated, lying and being in the Parish of Livingston in said State, near the Town of Port Vincent, described as follows, That Portion of Section 57, T 8 S, R 4 East, Greensburg District of Louisiana, bounded West and North by lands of C. R. Scivicque and East by lands of Marceline Cambre and C. R. Scivicque; South by lands of William H. Merritt and Sylvester Ely, the lands presently sold measuring one arpent and one-quarter (lj4) in width by about 32 arpents in depth as more fully appears from the sketch and proces verbal of Survey dated September 11, 1879, by George H. Grandjean, Parish Surveyor.”
The record discloses that the defendant Octave T. Cambre purchased in the year 1943 a tract described as follows:
“21 acres of land more or less, situated in Section 58, T 8 S, R 4 E, bounded as follows:
“Bounded North by Hugh Jenks; East by vendee, South by Linnee Scivicque, West by Seth Jenks.”
It is further shown, that the defendant Arthur A. Lass acquired from defendant Cambre a four and one-half acre tract out of the tract just described. It was alleged in the answer and it is counsel for defendants’ position on this appeal that their property is the same as that shown on the map of George PI. Grandjean dated September 11, 1879, in the name of “C. R. Scivicque” and delineated thereon by the letters “C”, “B”, “T”, “K”, “H”, and “I”. It will be remembered that the Grandj ean map is the same as that referred to in the plaintiff’s chain of title.
While both parties in these pleadings alleged possession of the disputed area, it appears that this question has passed from the case. Counsel for plaintiff contends that a stipulation was made to that effect but we find none in the record. Be that as it may, the question is no longer an issue for the record contains no evidence whatsoever relative to the point. Consequently, the question for determination resolves itself into an analysis of the three surveys and a decision as to which correctly reflects the boundary line, so as to establish title.
As pointed out previously, the plaintiff’s title makes reference to the Grandjean survey of 1879 and while the defendants’ deeds do not refer to this map, it is alleged in their answer that same correctly reflects the boundary between the properties. Counsel for plaintiff do not contest the accuracy of this map but contend that it should not be considered as it is not of record in Livingston Parish and is not referred to in the deed introduced by de *312 fendants. The record in the case, we note, does not show that this map is not of record and, furthermore, we fail to see where the matter of recordation is pertinent in view of the facts presented here. Moreover, it appears that the Grandjean map was used by all three of the civil engineers in making their surveys and therefore we must look to it in order to locate the correct boundary line.
The Grandjean map was made on September 11, 1879, and is entitled “Subdivision of the lower portion of Section 57 & the whole of Section 58 in T. 8 S. R. 4 E. Greensburg Dist. La.” The property claimed by the plaintiff as shown thereon is that portion marked “Estate of C. Scivicque” while that of the defendants is marked “C. R. Scivicque”. On opposite page is reproduced a portion of the sketch, showing the respective properties.
Coming now to the surveys we note first that the Moore survey places the line within 20 inches of that of Mr. Hol-lister. In view of the proximity of these two lines and the fact that Mr. Hol-lister’s survey carries with it a proces verbal, we will consider only the latter. The pertinent parts of Mr. Hollister’s findings are as follows:
“On Thursday, May 29, 1952, I went to the State Land Office and copied the necessary U. S. Field notes from public records. Then I went to Port Vincent and talked to Mr. Zuelke and to Mr. Cambre in order to become familiar with the contentions of each party and to examine the evidence. The evidence of very old surveys was too meager for me to arrive at any conclusion so I decided to correctly locate the line between Sections 57 and 58, T. 8 S. R. 4 E. before attempting to survey the boundary between Zuelke and Cambre.
“After due notice to participants, on Friday, May 30, 1952, at 9:00 A.M. I went to a U. S. corner common to Sections 8, 56 and 59; which point I had located on Feb. 11, 1952 from a definitely proven corner at the southeast corner of Section 8, T. 8 S. R. 4 E. Then I ran S. 46 degrees E. along old line, 12.48 chains to NE (or east) corner of Section 56, then S. 44 degrees W. along old line and old fence row, 45.25 chains to NW (or north) corner of Section 57. Thence S. 46 degrees E. 29.43 chains to NE (or east) corner of Section 57 on line of Section 58. Along about the first half of these courses the old line marks were visible on many holly and magnolia trees and old fences were generally followed the rest of the way. None of the participants were with me until afternoon when Mr. Moore arrived.
“From the NE (or east) corner of Section 57, I then ran S. 44 degrees W. on line between Sections 57 and 58, 16.73 chains to fence supposed to be on north line of Zuelke tract. Mr. Blakewood joined us on this line. Then I ran N. 46 degrees W. along this old fence, 3.63 chains (one and one-quarter arpents) and set stake for comer between Zuelke and Cambre. On Saturday, May 31, 1952 we met again at this corner. I tried to make the bearing trees on the Grandjean map (produced by Mr. Cambre) fit the existing trees but none would fulfill the requirements, so I concluded all the old trees were dead and rotted. From my stake, Mr. Moore’s corner was 20 inches over on Mr. Cambre’s land and the new fence was 38 links (25) feet) over on Mr. Zuelke’s land. The old fence was 20 links (13) feet) over on Mr. Cambre’s land. There was no evidence of a very old corner (that I could see).
* * * * * *
“Conclusion:
“If Mr. Zuelke has a clear title to one and one quarter arpents width in Section 57,1 am convinced that my line is correct and that Mr. Moore’s corners are 20 inches on Mr. Cambre’s land on both ends and that Mr. Blakewood’s corner (on the south) is one foot over on Mr. Zuelke’s land at the south corner and 25 feet or more over on

*313

*314 Mr. Zuclke’s land on the north corner. The Grandjean map (or photostatic copy) shows that Mr. Cambre’s land converges on the north end while Mr. Cambre contends that his land too is Wi arpents in width. This is probably the reason that the line Mr. Blakewood ran is too far east on the north end; having made offsets from Mr. Cambre’s NW line according to testimony of all parties.” (Italics ours.)
Pursuant to the stipulation of counsel, there was introduced into the record the affidavit of Mr. Blakewood, the pertinent parts of which read as follows:
“The survey which I made for Mr. Cambre, and the resulting line which I ran and established on the ground as the division line, or property line, between lands of Zuelke and Cambre was a reestablishment of the old Grand-jean line referred to in the above paragraph.
“There is considerable general evidence and reasons to substantiate as correct the line which I established as being the original Grandjean line, but I will point out only the following facts which are without question and which may be readily verified by any person interested:
“1. The corner marked ‘N’ on the Grandjean maps, hereinabove referred to, is described thereon as being a sweet gum tree. The stump of this gum tree is in existence at the present time. It is partly rotted with part of the heart in a sound condition. This stump was identified to me by Messrs. A. J. Cambre, Richard F. Cambre and O. T. Cambre as being the stump of a very old sweet gum tree, which bore an old ‘X’ mark (the surveyor’s mark of a corner). A. J. and Richard F. Cambre stated to me that in the year 1915, or thereabout, they bought a tract of land having this gum tree as the south corner of the tract. They further stated that they employed a surveyor to locate a portion of the southwest line at the time of the purchase, and that he pointed out the gum tree with the ‘X’ as the corner and used it as a known corner to begin the survey. Mr. O. T. Cambre stated to me that he has known the old gum tree with the ‘X’ mark to be the corner as far back as approximately 1905. They further stated that the gum tree has always been recognized by three adjoining land owners as the Grandjean corner.
“2. From the known corner ‘N’ (Gum stump) the distance of 50.80 chains (from Grandjean map) was measured and the corner ‘H’ set on the section line between sections 57 and 58. This point is 4.4 feet southeast of Hol-lister’s location of the section line.
“3. From ‘H’ the distance of 3.30 chains (Grandjean’s map) was measured to the corner T. At this corner one of the old Grandjean reference trees was located. Only a small portion of the stump remains. This is the pin oak tree N87 degrees East 27 links from the corner T. The corner T is also marked by an ‘X’ on a 40 inch black gum and by an ‘X’ and three hacks on a 36 inch pin oak. It is my opinion that the mark on the black gum is over 50 years old and the marks on the pin oak are over 30 years old.
"4. The major discrepancy between my line and that of Mr. Hollister is that he measured 3.63 chains from his location of section line 57-58 at ‘H’ when the distance according to the Grandjean map should have been 3.30 chains, or an error of 21.7 feet too far over on Cambre property. Also, his point of beginning quite some distance from the line in question has no tie in with the Grandjean survey,- of 1879 or any subsequent survey. Therefore, the error of 4.4 feet in Hollister’s location of the section line 57-58 with reference to the Grandjean survey is understandable. Mr. Hollister ran his line 3.63 chains distance from and parallel to his location of the section line 57-58. The Grandjean map shows *315 a width of 7.10 chains from D to F and a width of 6.49 from K to T or a convergence of 0.61 chains (40.26 feet) in a distance of 87.95 chains from D to K. The map also shows the bearing of the line E-I to equally divide the amount of convergence and by distance to equally divide the land on each side of it. The total width H to J is 6.60 chains and the width H to I is 3.30 chains. This clearly indicates that the line Mr. Hollister established is in no sense near the location of the old Grandjean line, which is the line to be reestablished.
“5. Mr. Hollister states that he found trees with old blaze and two chops (surveyor’s line marks) facing his line. These markings are not old. They were made approximately a year and a half ago, either at the time of Mr. Moore’s survey or subsequent thereto, and they do not all face Mr. Hollister’s line, some are on the opposite side of the tree. There are no old line marks on any trees along either line. There are no continuous old fences, and no evidence of possession to either or any line by either Zuelke or Cambre.
“6. In the conclusion of Mr. Hollis-ter’s Proces Verbal it is clearly evi-. dent that the line he established is simply a line running parallel to section line 57-58 at a distance of one and one-quarter arpents (3.63 chains) from said section line. This is not in conformity with the Grandjean line, and there is no basis for the establishment of any other line. According to the map of 1879 the Cambre tract was owned by C. R. Scivicque, while the Zuelke tract was owned by the Estate of C. Scivicque, and according to records the two separate tracts have not since been under the same ownership whereby the partition line could have been changed by sale of a specified width of land.
“Mr. Rhea D. Percy, a licensed civil engineer and surveyor of Baton Rouge, Louisiana, was employed by Mr. Cam-bre to personally check and verify all measurements, tree markings, maps, calculations, opinions and statements contained herein. This he has done and found same to be correct and as represented herein.”
A careful examination of the Grandjean map in the light of Mr. Blakewood’s affidavit convinces us that his findings are correct. It will be noted that Mr. Hollister was unable to recognize any of the boundary markers of the Grandjean survey and apparently he failed to follow the compass bearings of Grandjean.
By reference to the Grandjean map, it will be noted that the property of plaintiff is enclosed in that area designated by the letters “A”, “C”, “I” and “H”, while defendants’ property is designated by the letters “C”, “B”, “J”, “T”, “K”, “H”, and “I”. The distance between the points “D” and “E” (plaintiff’s property) is 3.55 chains, and between “E” and “F” (defendants’ property) is likewise 3.55 chains, or an overall width of 7.10 chains. The distance between the points “H” and “I” (plaintiff’s property) is 3.30 chains, and between “I” and “J” (defendants’ property) is likewise 3.30 chains, or an overall width at this point of 6.60 chains. The distance between the northernmost points shown on said map, “K” and “T” is 6.49 chains, all of which clearly discloses a convergence from 7.10 chains at the points shown as “D”, “E” and “F”, to 6.60 chains at the points designated as “H”, “I” and “J”, and 6.49 chains at the points shown as “K” and “T”. Instead of following the compass bearings of the original survey, that is, N43 degrees, fifty-two minutes East, so as to bisect the two tracts and give a width of 3.30 chains each between the points “H” and “I”, and between “I” and “J”, the Hollis-ter line actually increased the distance between “H” and “I” to 3.63 chains which is in excess of the true distance by .33 chains, or 21.7 feet.
Mr. Hollister apparently predicated his conclusion on the ground that the plain *316 tiff’s title called for a tract one and one-quarter arpents in width, assuming that this width ran the entire depth of the tract. Her title, however, makes reference to the Grandjean map, which controls over the deed. See Maginnis Land & Improvement Co. Ltd. v. Marcello, 168 La. 997, 123 So. 653. There is no contention that plaintiff owns any more land than reflected on the Grandjean may as “Estate of C. Scivic-que” nor is there any claim to a prescriptive title and thus the map must control. The location of these lines on the ground has, for reasons previously stated, we think, been correctly found by Mr. Blakewood.
Counsel for plaintiff contends that defendants’ title does not clearly identify the property in dispute as it calls for property in Section 58 rather than Section 57. While obviously there is an error in the designation of the section, it is of little importance as it appears that all parties agree on the general locality of their property and no one has been misled thereby.
For the reasons assigned the judgment of the lower court is reversed and it is ordered adjudged and decreed that the plaintiff’s suit be dismissed at her cost; it is further ordered that there be judgment in favor of defendants, Octave T. Cambre and Arthur A. Lass, and against the plaintiff, Leonise M. Cambre, decreeing the boundary line between their respective properties to be that line on the Grandjean Map, as reproduced herein, running from Point “C” N 43° 52' E. to Point “I”.
Judgment reversed.